IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOHAMMAD RAHMAN, d/b/a<br>7-11 FRANCHISE 11306 and<br>ALVARO T. GRACIAS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MICHAEL CHERTOFF, Secretary of the<br>U.S. Dept. of Homeland Security;<br>EMILIO GONZALEZ, Director U.S.<br>Citizenship and Immigration Services;<br>ROBERT P. WIEMANN, Director<br>Administrative Appeals Office;<br>PAUL NOVAK, Director U.S.<br>Citizenship and Immigration Services<br>Vermont Service Center,<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:   Civil Action No. 07-434-SLR<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS' ANSWERING BRIEF
IN FAVOR OF AFFIRMANCE**

　　　　　　　　　　COLM F. CONNOLLY
　　　　　　　　　　United States Attorney

　　　　　　　　　　Patricia C. Hannigan
　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　Delaware Bar I.D. No. 2145
　　　　　　　　　　The Nemours Building
　　　　　　　　　　1007 Orange Street, Suite 700
　　　　　　　　　　P. O. Box 2046
　　　　　　　　　　Wilmington, DE 19899-2046
　　　　　　　　　　(302) 573-6277
　　　　　　　　　　Patricia.Hannigan@usdoj.gov

Dated: March 3, 2008

# **TABLE OF CONTENTS**

                                                        **PAGE**

TABLE OF AUTHORITIES .................................................. ii

NATURE AND STAGE OF THE PROCEEDING .................................. 1

SUMMARY OF ARGUMENT .................................................. 2

STATEMENT OF FACTS .................................................... 2

STANDARD AND SCOPE OF REVIEW ......................................... 5

ARGUMENT ............................................................ 7

    THE USCIS ADMINISTRATION APPEAL OFFICE PROPERLY
    DENIED PLAINTIFFS' PETITION, AFTER REVIEWING ALL RELEVANT
    EVIDENCE, ON THE GROUNDS THAT PLAINTIFF RAHMAN COULD
    NOT SHOW THE ABILITY TO PAY THE PROFFERED WAGE ................. 7

CONCLUSION .......................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                 **PAGE**

*Allentown Mack Sales & Service, Inc. v. NLRB*
   522 U.S. 359 (1990) .................................................. 6

*Augat, Inc. v. Tabor, INS*
   719 F. Supp. 1158 (D. Mass. 1981) ...................................... 5

*Avena v. I.N.S.*
   989 F. Supp. 1 (D.D.C 1997) ............................................ 5

*Chevron U.S.A., Inc. v. NRDC*
   467 U.S. 837 (1984) .................................................... 5

*Chi-Feng Chang v. Thornburgh*
   719 F. Supp. 532 (N.D. Tex. 1989) ..................................... 10

*De Los Santos v. INS*
   690 F.2d 56 (2d Cir. 1982) ............................................. 5

*Dia v. Ashcroft*
   353 F.3d 228 (3d Cir. 2003) ........................................... 10

*Elatos Restaurant Corp. v. Sava*
   632 F. Supp. 1049 (S.D.N.Y. 1986) ................................. 6, 10

*Ethyl Corp v. EPA*
   541 F.2d 1 (D.C. Cir. 1976) ............................................ 6

*K.C.P. Food Co., Inc. v. Sava*
   623 F. Supp. 1080 (S.D.N.Y. 1985) .................................... 10

*MobileTel, Inc. v. FCC*
   107 F.3d 888 (D.C. Cir. 1997) .......................................... 6

*North American Industries, Inc. v. Feldman*
   722 F.2d 893 (1st Cir. 1983) ........................................... 5

*Oddo v. Reno*
   17 F. Supp. 2d 529 (E.D.Va. 1998)
   aff'd, 175 F.3d 1015 (4th Cir. 1999) ................................... 6

| **CASES** | **PAGE** |
|---|---|

*Richards v. INS*
    554 F.2d 1173 (D.C. Cir. 1997) .................................................. 5

*Tapis International v. INS*
    94 F. Supp. 2d 172 (D.Mass. 2000) ............................................. 5

*Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*
    736 F.2d 1305 (9th Cir. 1984) ..................................................... 10

*Ubeda v. Palmer*
    539 F. Supp. 647 (N.D. Ill. 1982)
    *aff'd.*, 703 F.2d 571 (7th Cir. 1983) ............................................. 7

*Yuk-Ling Wu Jew v. Attorney General*
    524 F. Supp. 1258 (D.C.C. 1981) ................................................ 6


**STATUTES AND OTHER AUTHORITIES**

    8 C.F.R § 204.5(a) ............................................................................ 1
    8 C.F.R § 204.5(a)(2) ...................................................................... 1
    8 C.F.R. § 204.5(g)(2) ................................................................. 1, 2

    28 U.S.C. § 2201 ............................................................................. 1

## NATURE AND STAGE OF THE PROCEEDING

This is an action brought by Plaintiff Mohammad Rahman, owner of a convenience store franchise ("7-11"), who wishes to hire Plaintiff Alvaro T. Gracias, an alien. The regulatory scheme under which such petitions are processed by the United States Citizenship and Immigration Services ("USCIS") involves, first, the filing with the United States Department of Labor ("DOL") by the petitioner (here, Mr. Rahman) of an Application for Alien Employment Certification ("Form ETA-750"). 8 C.F.R 204.5(a)(2). If that application is "certified" by DOL (as it was here), the petitioner next files with USCIS a Petition for Alien Worker, or "Form I-140." 8 C.F.R 204.5(a). Among other things, the petitioner has the burden to show the business has the ability to pay the proffered wage to the alien, from the date the Form ETA-750 was filed until the date the alien eventually receives permanent residence status in the United States. 8 C.F.R 204.5(g)(2).

In this case, USCIS, through the Vermont Service Center, denied the petition on the grounds that Plaintiff Rahman could not demonstrate the ability to pay the proffered wage. A.R. -11-13. On appeal to the USCIS Administrative Appeal Office ("AAO"), that decision was reviewed *de novo* and the appeal was dismissed. A.R.-1-9.

The appeal on the record to this court followed. Plaintiffs have filed their Opening Brief ("OB") in support of their argument that the Court should either enter a declaratory judgment ordering USCIS to approve the Form I-140 filed by Plaintiff Rahman on behalf of Plaintiff Gracias[1], or in the alternative, remand to USCIS for further consideration.

---

[1] Although Plaintiffs' Opening Brief recites in the Introduction and again in the Conclusion that they seek declaratory judgment, nowhere in the brief is that issue addressed. There is no citation to 28 U.S.C. § 2201, no citation to case law and no statement of the grounds

This is Defendant's Answering Brief in Favor of Affirmance.

## SUMMARY OF ARGUMENT

Plaintiffs cannot carry their burden of showing that the AAO's decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

## STATEMENT OF FACTS

Plaintiff Rahman filed with the DOL a Form ETA-750 on behalf of Alvaro Gracias on July 29, 2002. A.R.-146. The application was certified on March 3, 2003 (A.R.-145), following which Plaintiff, through counsel, caused the concurrent filing of an I-140 Employment Based Immigrant Visa Petition on behalf of Mr. Gracias, and I-485 Applications to Adjust Status on behalf of Mr. Gracias, his wife and their daughter. A.R.-173. Those applications were submitted to the USCIS in April of 2003. *Id.*

One of the elements of proof an applicant must satisfy – and the only one at issue in this case – is that the petitioning employer has the ability to pay the alien the proffered wage. The kinds of documentation required in support of that position are set forth in 8 C.F.R. § 204.5(g)(2) as follows:

> *Ability of prospective employer to pay wage.* Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established [July 29, 2002 in this case] and continuing until the beneficiary obtains lawful permanent residence. *Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or*

---

on which Plaintiffs claim they are entitled to a declaratory judgment. Without an explanation of Plaintiff's position, the Defendants are unable to respond. If Plaintiffs choose to articulate the basis for their claim in their Reply Brief, Defendants will seek leave of the court to respond or strike. Defendants now ask that the court dismiss the request for declaratory relief for failure to prosecute.

> *audited financial statements.* In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. *In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by [Citizenship and Immigration Services ("CIS")].*

Emphasis added.

While it is true, as Plaintiffs argue, that they submitted several documents in support of their applications, the only financial document Plaintiff Rahman supplied to show his ability to pay Mr. Gracias the promised annual wage of $38,740.00, as required by the regulation, was the 2002 Form 1040 tax return he had filed with the Internal Revenue Service ("IRS"). A.R.-173-174. That document admittedly showed gross receipts of $1,299,735.00, as pointed out in Plaintiff's cover letter (*id.*), but it also showed a net loss of more than $22,000.00 for the year. A.R.-53.

Apparently dissatisfied with the financial data, USCIS asked for additional documentation on March 29, 2004, including the following:

> Form 1040, United States Individual Tax Return and Schedule C, Profit or Loss From Business (Sole Proprietorship) for the year 2001; include all schedules and attachments supporting that return.
>
> Form W-3, Transmittal of Wage and Tax Statements, forwarded to the [IRS] by your business for the 2001 and 2002 tax years.
>
> Submit documentation, such as stocks, bank accounts, or other assets you want this office to consider regarding your ability to pay the proffered wage.

A.R.-177.

In response, Mr. Rahman supplied his Forms 1040, with attached schedules, for 2001, 2002 (again) and 2003. A.R.-178. He also provided a barrage of other internal documentation

such as his Balance Sheet Summaries, Income and Expense Detail Sheets, Cash Flow Statements, Financial Summaries, his "Retirement Statement," and an "Account Profile," all of which were un-audited and appeared to have been prepared by 7-11. *Id.* In addition, Rahman supplied his wife's tax forms for 2001, 2002 and 2003, and evidence that he had paid off his home mortgage and the lien on his car. *Id.* Finally, he provided a copy of a Prime Equity Line of Credit Agreement & Disclosure Statement showing he had a maximum credit limit of $50,000.00. *Id.*

In addition to this documentation, he produced a letter from a Certified Public Accountant ("CPA") in which the author opines that, taken as a whole, all this information substantiates Plaintiff's argument that he has the ability to pay Mr. Gracias the proffered wage. A.R.-35-38.

Unfortunately for Plaintiffs, a comparison of the 7-11 internal business documentation with the tax returns filed with the IRS showed two different pictures. The tax returns showed either a net loss or a small profit for each of the three years. In no year was the profit high enough to cover Mr. Gracias' proposed wages. A.R.-39, A.R.-53, A.R.-60, A.R.-138. The CPA letter attempts to explain away the apparent discrepancy by asserting that the "cash basis" accounting method used in preparing the tax returns had been employed for the purpose of decreasing Plaintiff's tax liability, whereas a more fair review of Plaintiff's financial status (for purposes of proving his ability to pay Mr. Gracias) would be under a different accounting method, as set forth in the internal documentation. *Id.*   A.R.-35.

USCIS was not persuaded by the torrent of paper supplied by Plaintiff Rahman purportedly demonstrating that he had the ability to pay Mr. Gracias the promised wage.

Rahman's petition was denied on September 22, 2004. A.R. 11-13. That denial was upheld on appeal to the Administrative Appeals Office ("AAO"), which dismissed the matter on May 26, 2006, in a detailed opinion. A.R.-1-9. Plaintiff now appeals that dismissal to this Court.

## STANDARD AND SCOPE OF REVIEW

The USCIS decision denying the plaintiff's petition should be affirmed because it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Augat, Inc. v. Tabor, INS*, 719 F. Supp. 1158, 1160 (D. Mass. 1981), *quoting Richards v. INS*, 554 F.2d 1173, 1177 (D.C. Cir. 1997). *See also, North American Industries, Inc. v. Feldman*, 722 F.2d 893, 898 (1st Cir. 1983). The court's "function when reviewing an agency decision is limited to determining whether the evidence in the administrative record is sufficient to support the conclusion the agency reached." *Augat*, 719 F. Supp. at 1160. An abuse of discretion occurs "where the decision is not supported by substantial evidence or where the determination relies on an improper understanding of the law." *Tapis International v. INS*, 94 F. Supp. 2d 172, 174 (D.Mass. 2000).

The court's review for arbitrary and capricious conduct is an extremely deferential one, particularly where an agency is interpreting a statute Congress entrusted to it and where it has special expertise. *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). *See also, De Los Santos v. INS*, 690 F.2d 56, 60 (2d Cir. 1982) (where "the INS's strict interpretation is consistent with the language and history of the Immigration and Nationality Act and is, as a general matter, reasonably calculated to serve the purposes of the Act, it is entitled to deference and should not be invalidated"). Indeed, the court should accept an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous." *Avena v. I.N.S.*, 989 F. Supp. 1, 4

(D.D.C 1997), citing *MobileTel, Inc. v. FCC*, 107 F.3d 888, 894 (D.C. Cir. 1997). This standard presumes the validity of agency action. *Id.*, citing *Ethyl Corp v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976). In summary,

> In reviewing INS decisions . . . the court must bear in mind two considerations. First, "control over matters of immigration is a sovereign prerogative."(citation omitted). While the court "must not yield to the temptation to rubberstamp all decisions,"(citation omitted), it must nonetheless give deference to the INS's interpretation of the statute that it is charged by law with administering and enforcing (citation omitted). In this regard, INS interpretations need not be the best possible interpretations, and the court should not overturn a decision "simply because it may prefer another interpretation of the statute." (citation omitted). It is sufficient if the INS's interpretation is consistent with the language of the Act and is reasonably calculated to serve its purposes.

*Elatos Restaurant Corp. v. Sava*, 632 F. Supp. 1049, 1053 (S.D.N.Y. 1986). "Thus, courts have refused to overrule agency interpretations of statutory authority in the area of immigration absent an affirmative showing that the interpretation is unreasonable or contrary to legislative intent." *Yuk-Ling Wu Jew v. Attorney General*, 524 F. Supp. 1258, 1260 (D.C.C. 1981). The agency action will stand if the record reveals a rational basis for the decision. *Oddo v. Reno*, 17 F. Supp. 2d 529 (E.D.Va. 1998), *aff'd*, 175 F.3d 1015 (4th Cir. 1999)(INS did not act arbitrarily or capriciously in revoking petition). Moreover, the court must accept the administrative findings of facts unless the record is such that no rational fact-finder could have made the findings. *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1990).

## **ARGUMENT**

## **THE USCIS ADMINISTRATION APPEAL OFFICE PROPERLY DENIED PLAINTIFFS' PETITION, AFTER REVIEWING ALL RELEVANT EVIDENCE, ON THE GROUNDS THAT PLAINTIFF RAHMAN COULD NOT SHOW THE ABILITY TO PAY THE PROFFERED WAGE**

Plaintiffs' fundamental argument is that the AAO allegedly failed to consider the totality of his financial picture. The two principle prongs of this argument are (1) the AAO improperly relied on Plaintiff Rahman's his tax returns instead of his internal documentation and his CPA's "expert report," and (2) the AAO erred in refusing to consider Rahman's line of credit as a current asset, but instead viewed it as a potential debt or liability. However, the Defendants urge that neither was an abuse of discretion.

### **The AAO Considered All Relevant Evidence**

The AAO correctly stated that a petitioner is required to "show the ability to cover his or her existing business expenses as well as to pay the proffered wage. In addition, the sole proprietor must show sufficient resources for his or her own support and for that of any dependants." A.R.-4, citing *Ubeda v. Palmer*, 539 F. Supp. 647 (N.D. Ill. 1982), *aff'd.*, 703 F.2d 571 (7th Cir. 1983). Moreover, the AAO correctly noted that, because Plaintiff Rahman is a sole proprietor, his income and personal liabilities were properly to be considered in determining his ability to pay the proffered wage to Mr. Gracias. *Id.*

In determining the plaintiff's ability to pay the proffered wage, the USCIS first considered the requirements of 8 C.F.R. § 204.5(g)(2), including copies of annual reports, federal tax returns or audited financial statements. A.R.-2. The AAO then recited more than twenty pieces of "relevant evidence" in the record. A.R.-3. With respect to the CPA's "expert report," Plaintiffs

now argue that the AAO ignored the opinions in the report and instead substituted its own opinion on the petitioner's finances. However, the AAO reviewed in detail the financial documents relied upon by the CPA in preparing his report and found fault with many of them. For instance, the AAO rejected the cash flow statements as essentially unaudited financial statements, pointing out that the regulation requires audited statements. "Unaudited financial statements are the representations of management. The unsupported representations of management are not reliable evidence and are insufficient to demonstrate the ability to pay the proffered wage." A.R.-6.

The AAO rejected counsel's statement that Plaintiff Rahman intended to replace his wife as an employee with Plaintiff Gracias, and therefore her $18,000.00 salary would be available to contribute to Mr. Gracias' wage. A.R.-6. It pointed out that the record "does not verify her full-time employment or provide evidence that petitioner has replaced or will replace her with the beneficiary.... Moreover, there is no evidence that the position of the owner's wife involves the same duties as those set forth in the Form ETA 750. The petitioner has not documented the position, duty and termination of the worker who performed the duties of the proffered position." *Id.* Again, far from refusing to consider this argument, the AAO reviewed the evidence carefully and reasonably rejected it.

The AAO similarly declined to rely upon the market value of Plaintiff Rahman's Roth IRA as being a current asset, available to contribute to the proffered wage, on the grounds that "it does not take into account penalties that will be assessed if money is withdrawn prior to the owner meeting all the qualifications for a Roth IRA withdrawal, and the record does not contain

information regarding the amount the owner will actually have after penalties have been assessed." *Id.* Once more, this demonstrates careful consideration, not a refusal to consider.

The AAO continued its analysis, declining Plaintiff's request to consider the value of his home equity and the net worth of his franchise, because they are "not liquid assets" and therefore "cannot be considered as available cash for the sole proprietor to pay the proffered wage and/or personal expenses. Additionally, using the home's equity would involve obtaining a loan and creating a debt. Similarly, the net worth of the franchise would only be valued if the petitioner sought a loan or sold the business." *Id.* Once more, the AAO considered the additional financial information. The fact that he disagreed about the utility of those assets in determining the petitioner's ability to pay the proffered wage is not an abuse of discretion.[2]

### The AAO's Reliance On Tax Returns Was Appropriate

Plaintiffs argue that the AAO should have disregarded Plaintiff Rahman's tax returns and, instead should have relied on Rahman's 7-11 internal documentation in determining ability to pay. The AAO correctly cited to authority that "reliance on federal income tax returns as a basis for determining petitioner's ability to pay the proffered wage is well established by judicial

---

[2] Plaintiffs' Opening Brief asserts that USCIS failed to follow its own internal protocol and guidelines as set forth in the minutes of a 1994 meeting. OB at 22. In support of that proposition, Plaintiffs' Brief attached as Exhibit B an article published on the internet by an attorney in private practice, which discusses a May, 2004 memorandum written by William R. Yates, USCIS Associate Director for operations. The memorandum is addressed to Service Center Directors and others, and "provides instructions for CIS adjudicators concerning determination of a prospective U.S. employer's ability to pay the proffered wages." A.R.-29. The internet article compares the 1994 minutes to the 2004 guidance, leading Plaintiffs to contend that the 1994 standards were more flexible and should have been employed in this case. OB at 25-26. The problem with this argument is that the "more flexible" standards *were* used in this case. The AAO *did* consider all the evidence, the "totality of a sole-proprietor's financial circumstances," as Plaintiffs requested. OB at 26. There is, therefore, no basis for arguing that the AAO abused its discretion in failing to follow its own protocol.

precedent." A.R.-3, citing *Elatos*, 632 F. Supp. at 1054 (citing *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 (9th Cir. 1984); *see also Chi-Feng Chang v. Thornburgh*, 719 F. Supp. 532 (N.D. Tex. 1989); *K.C.P. Food Co., Inc. v. Sava*, 623 F. Supp. 1080 (S.D.N.Y. 1985).

The AAO then took the extra steps of reviewing in detail all the additional material Plaintiffs had supplied, even though the caselaw did not require that additional consideration, stating "[r]egardless, the AAO will look at other evidence in the record regarding the owner's overall financial circumstances." A.R..-5. As discussed above, the AAO then reviewed each document in detail. While it is true, as Plaintiffs argue, that it ultimately declined to rely on other documentation to the exclusion of the tax returns, it presented "specific, cogent reasons" for doing so. *See, e.g Dia v. Ashcroft*, 353 F.3d 228, 249-250 (3d Cir. 2003).

The AAO rejected outright the argument that the tax returns should be ignored because the cash-basis calculations supporting the returns had been done for the purpose of reducing Plaintiff Rahman's tax liability, whereas the accrual-basis calculations would have yielded a different result. A.R.-5. The AAO noted that it would have "accepted tax returns prepared pursuant to [a different accounting practice] if those were the tax returns the petitioner actually submitted to IRS. This office is not, however, persuaded by an analysis in which the petitioner, or anyone on its behalf, seeks to rely on tax returns or financial statements prepared pursuant to one method, but then seeks to shift revenue or expenses from one year to another as convenient to the petitioner's present purposes." *Id*. Even then, however, the AAO pointed out that the petitioner ultimately controlled the evidence it considered, commenting that "[i]f the petitioner wished to persuade this office that accrual accounting supports the petitioner's continuing ability

to pay the proffered wage..., then the petitioner's accountant was obliged to prepare and submit audited financial statements pertinent to the petitioning business according to generally accepted accounting principles." *Id.* In making these findings, the AAO conducted its review in accordance with the regulations. This is far from an abuse of discretion and Plaintiffs can cite to no authority to the contrary.

**The AAO Properly Rejected The Argument That It Should Consider The Line Of Credit As A Current Asset**

The AAO addressed the line of credit argument with the same level of detail and reasoning:

> In calculating the ability to pay the proffered salary, CIS will not augment the petitioner's net income or net current assets by adding in credit limits, bank lines or lines of credit. A "bank line" or "line of credit" is a bank's unenforceable commitment to make loans to a particular borrower up to a specified maximum during a specified time period. A line of credit is not a contractual or legal obligation on the part of the bank.... Since the line of credit is a "commitment to loan" and not an existent loan, the petitioner has not established that the unused funds from the line of credit are available at the time of filing the petition.... CIS will give less weight to loans and debt as a means of paying salary since the debts will increase the firms's liabilities and will not improve its overall financial position."

A.R.-7. Surely there is no abuse of discretion in the refusal to consider future possible debt as a current asset.

After this detailed review of the financial information Plaintiffs presented in support of Rahman's ability to pay the proffered wage, and the rejection of that claim, the AAO concluded "the totality of the circumstances in this case do not show that the petitioner has the ability to pay the proffered wage." A.R.-8. This conclusion is amply supported by substantial evidence in the record, as demonstrated in the AAO's detailed opinion, and should be upheld.

## **CONCLUSION**

Contrary to the arguments in Plaintiffs' Opening Brief, the AAO did not substitute its own expertise (or lack thereof) for the CPA's expert opinion simply because it refused to embrace that opinion. The AAO did exactly what Plaintiffs now request; it considered *all* the evidence and reached the legal conclusion that Plaintiffs could not carry their burden of showing that Mr. Rahman had the ability to pay the proffered wage to Mr. Gracias. There is clearly a rational basis in the record for that decision.

There is no abuse of discretion and the Defendants ask the Court to affirm the AAO's decision.

                                        Respectfully submitted,

                                        COLM F. CONNOLLY
                                        United States Attorney

By:    /s/Patricia C. Hannigan
         Patricia C. Hannigan
         Assistant U.S. Attorney
         The Nemours Building
         1007 Orange Street, Suite 700
         Wilmington, DE 19801
         (302) 573-6277

Dated: March 3, 2008

## CERTIFICATE OF SERVICE

      I, Patricia C. Hannigan, hereby certify that on **March 3, 2008**, I electronically filed the foregoing **DEFENDANTS' ANSWERING BRIEF IN FAVOR OF AFFIRMANCE** with the Clerk of Court using CM/ECF, which will send electronic notification of such filing to the following:

**Karen V. Sullivan**, Esquire
Oberly, Jennings & Rhodunda, PA
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899
302-576-2000
ksullivan@ojlaw.com

                              COLM F. CONNOLLY
                              United States Attorney

                       By: /s/Patricia C. Hannigan
                            Patricia C. Hannigan
                            Assistant United States Attorney
                            Delaware Bar I.D. No. 2145
                            The Nemours Building
                            1007 Orange Street, Suite 700
                            P. O. Box 2046
                            Wilmington, DE 19899-2046
                            (302) 573-6277
                            Patricia.Hannigan@usdoj.gov