IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MOHAMMAD RAHMAN, d/b/a 7-11 FRANCHISE 11306 and ALVARO T. GRACIAS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 07-434-SLR ) |
| MICHAEL CHERTOFF, Secretary of the U.S. Department of Homeland Security; EMILIO GONZALEZ, Director U.S. Citizenship and Immigration Services; ROBERT P. WIEMANN, Director Administrative Appeals Office; PAUL NOVAK, Director U.S. Citizenship and Immigration Services Vermont Service Center, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Charles M. Oberly, III, Esq., and Karen V. Sullivan, Esq., of Oberly, Jennings & Rhodunda, P.A., Wilmington, Delaware, and David E. Piver, Esq., of the Law Office of David E. Piver, Wayne, Pennsylvania. Counsel for Plaintiffs.

Patricia C. Hannigan, Esq., Assistant United States Attorney, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: August 1⁰, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Mohammad Rahman ("Rahman") and Alvaro T. Gracias ("Gracias") (collectively, the "plaintiffs") filed this action against Michael Chertoff, Secretary of the United States Department of Homeland Security; Emiliano Gonzalez, Director, United States Citizenship and Immigration Services ("USCIS"); Robert P. Wiemann, Director, Administrative Appeals Office ("AAO"); and Paul Novak, Director, United States Citizenship and Immigration Services Vermont Service Center ("VSC"), on July 11, 2007. (D.I. 1) Plaintiffs seek judicial review, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 704, of a final decision by the AAO denying Gracias' Petition for Alien Worker status ("I-140"). For the reasons stated below, the court will grant plaintiffs' motion to remand the case to the AAO for further consideration.

## II. BACKGROUND

Since 2001, Rahman has owned and operated a 7-11 convenience store ("7-11") in Wilmington, Delaware. (D.I. 11 at 2) On July 29, 2002, Rahman, who wished to hire Gracias as his store manager, filed an Application for Alien Employment Certification ("ETA-750") with the United States Department of Labor ("DOL"). The application was approved on March 3, 2003.[1] (D.I. at 145-49) Rahman, on Gracias' behalf, filed an I-

---

[1]The USCIS has established a three-step process by which an employer can sponsor a resident alien for permanent residency. First, the employer must file with the DOL an ETA-750 which specifies the terms and conditions of the proposed employment arrangement, and states that by employing the foreign worker, a qualified and available United States Citizen is not being displaced. 8 C.F.R. § 204.5(a)(2). Following certification of the ETA-750 by the DOL, the employer files an I-140 which, as it pertains to plaintiff's cause of action, establishes that the employer has the ability to pay the foreign worker from the filing date of the ETA-750 until permanent residence status is received. 8 C.F.R. § 204.5(g)(2). After the I-140 is approved by the USCIS, the employee files an Application to Adjust Permanent Resident Status ("I-485"). 8 C.F.R.

140 on or about April 21, 2003. (*Id.* at 173) The I-140 stated that Rahman had the

ability to pay Gracias $38,740 per year as specified in the ETA-750. Rahman

supplemented this declaration with his 2002 tax return.[2] (*Id.*) Rahman's 2002 tax form

showed a net loss for the year, and further evidence of his ability to pay Gracias was

requested by the VSC. (*Id.* at 176-77) In response, Rahman submitted a financial

analysis of his business, prepared by Joseph Caputo ("Caputo"), a certified public

accountant, stating that Rahman had the ability to pay Gracias' annual wage despite

showing a loss on his tax return. Rahman also submitted documentation showing a

prime equity line of credit in his name for $50,000, personal assets he was willing to use

to pay Gracias, and various balance sheets and cash flow statements. (*Id.* at 178-79)

On September 22, 2004, the VSC determined that the information provided by Rahman

was insufficient to establish his ability to pay Gracias' salary. (*Id.* at 11-13)

On October 26, 2004, Rahman appealed the VSC's determination to the AAO.

(*Id.* at 10) The AAO affirmed the VSC's decision, and the appeal was dismissed on

May 26, 2006. (*Id.* at 1-9) The AAO, in pertinent part, announced that:

> (1) because a "line of credit is a 'commitment to loan' and not an existent loan,
> [Rahman] has not established that the unused funds from the line of credit [were]
> available at the time of filing the petition[,]" and could be used to pay Gracias'
> annual wage";

---

§ 204.5(n).

[2]When assessing a prospective employer's ability to pay an alien worker's
wages, the USCIS considers "copies of annual reports, federal tax returns, or audited
financial statements . . . . In appropriate cases, additional evidence, such as profit/loss
statements, bank account records, or personal records, may be submitted by the
[employer] or requested by the [Citizenship and Immigration Service for consideration]."
8 C.F.R § 204.5(g)(2).

2

(2) it would not consider Rahman's cash flow statements and balance summaries as they were unaudited;

(3) it would not consider past wages paid to Rahman's wife, whose employment would be terminated once Gracias was hired, to establish Rahman's ability to pay Gracias;

(4) many of the personal assets Rahman listed as tending to show his ability to pay Gracias were not liquid assets and, therefore, would not be considered; and

(5) it would not re-analyze the profitability of Rahman's business in light of a different accounting method from that used in his tax forms unless such documentation was audited. (*Id.*)

## III. STANDARD OF REVIEW

Under the APA, a court reviewing the final decision of an administrative agency "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of [the] agency action." 5 U.S.C. § 706. "Accordingly, the issue is whether the administrative determination was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Anker Energy Corp. v. Consolidation Coal Co.,* 117 F.3d 161, 169 (3d Cir. 1999) (quoting 5 U.S.C. § 706(2)(a)). This scope of review is narrow and the court should not substitute its judgment for that of the agency unless the agency's determination is "plainly erroneous or inconsistent with the regulation". *Motor Vehicle Mfrs. Assn. v. State Farm Mutual,* 463 U.S. 29, 43 (1983); *Leia v. Ashcroft,* 393 F.3d 427, 432 (3d Cir. 2005) (internal citations omitted).

## IV. DISCUSSION

Plaintiff contends that the AAO's final determination violates the APA, 5 U.S.C. § 706(2)(a), in that is was arbitrary, capricious, irrational and contrary to the law on four separate grounds. (D.I. 11 at 7) The court will discuss each ground individually.

3

## A. AAO's Decision to Disregard Rahman's Line of Credit

Plaintiffs contend that the AAO "irrationally disregarded [ ] Rahman's ability to access his line of credit as evidence of his ability to pay [Gracias'] proffered wage," and that the AAO's decision was internally inconsistent when it disregarded the effect of Rahman's line of credit on his ability to pay, but indicated that an existent loan would have been considered. (*Id.* at 11,12) The AAO's decision was based on the presumption that, because lines of credit are only unenforceable commitments to loan (as opposed to an existent loan), such "assets" cannot be used to establish the ability to pay at the time of filing as they are not available and/or guaranteed. (D.I. 8 at 7) In this respect, the AAO's decision is not unreasonable and is consistent with its statement regarding the effect of an existent loan on a petitioner's ability to pay. This court will not substitute its judgment on this issue for that of the AAO's.

## B. AAO's Use of Improper Review Standard

Plaintiffs next assert that the AAO's decision to uphold the VSC's denial of Gracias' I-140 was an abuse of discretion because the AAO reviewed the VSC's decision under guidelines not in effect at the time the case was filed. From 1994 until 2004, the VSC was to adjudicate I-140 petitions pursuant to guidelines contained within a 1994 memoranda. (D.I. 11 at 23) Plaintiffs, who submitted their I-140 petition to the VSC in 2002, aver that had the AAO used the "more flexible" 1994 standard to assess Rahman's ability to pay Gracias' salary, it would have been "compelled" to approve the I-140 and overturn the VSC's decision. (*Id.* at 25) The "more flexible" standard referred to by plaintiffs required that a petitioner's overall financial resources be taken into

4

account when assessing the employer's ability to pay the proffered wage stipulated in the ETA-750. (*Id.* at 25)  While the AAO stated that the precedent relied upon by plaintiffs in support of this assertion is not binding on the AAO, the AAO specifically noted in its decision that "[it] does take into consideration the overall financial circumstances of the owner of a sole proprietorship, and the AAO will look at each piece of relevant evidence in the record." (D.I. 8 at 5)  Rahman's appeal should not be remanded to the AAO on this ground as the AAO did not disregard the appropriate protocol for reviewing I-140 petitions submitted by sole proprietors.

## C. AAO's Refusal to Consider Rahman's Personal and Business Assets

Plaintiffs assert further that the AAO improperly rejected other documented financial resources that, when "considered as a whole," would have proven Rahman's ability to pay Gracias' proffered wage.  On appeal, plaintiffs presented evidence to the AAO that: (1) Upon Gracias beginning work at 7-11, Rahman's wife would stop working, and the wages previously paid to Rahman's wife would be available to assist in paying Gracias' annual wage; and (2) Rahman was willing to use his business or personal assets to pay portions of Gracias' salary including his personal checking account, Individual Retirement Account, and the estimated value of his home. (D.I. 11 at 15- 16) The AAO rejected all evidence relating to increased payroll capacity resulting from Gracias replacing Rahman's wife because "wages already paid to others are not available to prove the ability to pay the wage proffered to the beneficiary . . . [,]" and as documentation was not submitted to show that the duties of Rahman's wife and Gracias would be the same, the AAO could not make the determination that the exchange of

5

positions would actually occur.[3] Additionally, the AAO rejected Rahman's personal assets as demonstrating his ability to pay Gracias' salary because the assets were either not liquid or described in unaudited documentation. The AAO's decision to reject much of Rahman's financial documentation because it was unaudited may have been appropriate if submitted by Rahman himself and without being analyzed by Caputo. However, as discussed below, the financial documentation relied upon by Rahman was either prepared or verified by Caputo and should not have been ignored as unaudited financial documentation.

### D. AAO's Refusal to Accept Expert Evidence

In its decision, the AAO disregarded the expert financial analysis submitted by Caputo which stated that Rahman had "ample financial resources" to pay Gracias' annual wage. (*Id.* at 26-27; D.I. 8 at 35) Caputo's opinion was based upon his professional assessment of Rahman's personal equity, access to credit, cash flow statements, projected profits, and freed wages available following Gracias replacing Rahman's wife on the 7-11 payroll. The AAO refused to give deference to Caputo's analysis as the documentation Caputo relied upon was "essentially" unaudited, and "[were] the representations of management." (D.I. 11 at 27; D.I. 8 at 6) Besides these conclusory statements, the AAO does not give any reason why the documentation reviewed and prepared by Caputo fails to satisfy the auditing requirement of 8 C.F.R. § 204.5(g)(2). The AAO was obligated to fully consider Caputo's financial analysis

---

[3]Because this is a common sense proposition (i.e., an employee who leaves frees up her former wages), the court assumes that the AAO questioned whether Rahman's wife was going to leave at all, and not the minutia of her duties and wages versus those of Gracias.

6

establishing Rahman's ability to pay and, if the AAO were to disregard Caputo's analysis as unaudited documentation, it must give specific reasons for doing so.  *See Leia v. Ashcroft*, 393 F.3d 427, 435 (3d Cir. 2005) (establishing that an expert's analysis of subject matter within her expertise must be meaningfully considered by an administrative appeals board).  Therefore, plaintiffs' petition will be remanded to the AAO for further consideration in light of Caputo's opinion that the financial documentation provided by Rahman establishes his ability to pay Gracias' annual wage despite showing a net loss on his 2002 tax return.

## V. CONCLUSION

For the reasons set forth above, plaintiffs' case shall be remanded to the AAO for further consideration.  An appropriate order shall issue.